H. McGarry, *et al.*, v. The State of Kansas.

Bastardy Bond, *Construed; Abide the Judgment.* Under § 5 of the act relating to illegitimate children, the words in the recognizance requiring the defendant to "abide the judgment and orders" of the court do not mean that the defendant or his sureties shall pay or satisfy the final judgment rendered in the case, but that when such judgment is rendered he will surrender himself into the custody of the court, ready and willing, as required by § 13 of the act, to secure the payment of such judgment by good and sufficient sureties, or in default thereof to be committed to jail until such security be given.

*Error from McPherson District Court.*

Action brought by *The State* against the sureties on a bond by them given in a bastardy proceeding. Trial at the November Term, 1885, and judgment for plaintiff. The defendants bring the case to this court. The opinion sufficiently states the facts.

*Grattan & Grattan*, for plaintiffs in error.

*D. P. Lindsey*, for defendant in error.

The opinion of the court was delivered by

Valentine, J.: This was an action brought by the state of Kansas against H. McGarry, J. McDermid, and W. J. Lloyd, on a bond given by the defendants in a bastardy proceeding. The case was tried by the court without a jury, and judgment was rendered in favor of the plaintiff and against the defendants for $400 and costs. The defendants bring the case to this court.

It appears from the pleadings, the admissions of the parties and the evidence in the case, among other things, as follows: Jasper M. Stebbins was charged with bastardy by Clara Wilson, the mother of the bastard child, before Frederick Salter, a justice of the peace in and for McPherson county. A hearing was had before the justice, who adjudged that Stebbins was the father of the bastard child, and ordered and required

that he, with sufficient sureties, should enter into a recognizance, as required by law, in the sum of $400. In pursuance of such order of the justice, the defendants in this action, McGarry, McDermid, and Lloyd, on January 11, 1883, entered into the bond sued on in this action in the sum of $400, conditioned that said Stebbins would appear in the district court of such county on January 16, 1883, to answer the aforesaid complaint, and not depart without leave, and abide the judgment and orders of such court. Only the sureties signed the bond. Stebbins himself did not sign it. Stebbins appeared in person in the district court, and answered said complaint. The hearing was had on January 17, 1883, before the court and a jury, and Stebbins was again adjudged to be the father of the bastard child, and judgment was rendered accordingly. He remained in court, and did not depart therefrom without leave of the court; and when the aforesaid judgment was rendered, he asked the court to fix a bond to satisfy the judgment, which the court refused to do, and forced Stebbins to go hence on the bond already given in the justice's court. Stebbins has all the time remained in McPherson county, and has at no time been imprisoned on any of the aforesaid bastardy proceedings. The district court, in rendering judgment in the bastardy proceedings, ordered that Stebbins should pay certain sums of money, which he failed to do, and the same have not been paid; and these failures of payment are the only breaches of the bond alleged in this action.

Sections 5, 9, 13, and 14, of the act relating to illegitimate children, read as follows:

"SEC. 5. If the justice, on the hearing, adjudge the defendant to be the father of such child, he shall require him to enter into a recognizance in a sum not less than two hundred nor more than one thousand dollars, with sufficient sureties, payable to the state of Kansas, and conditioned that he will appear at the next term of the district court of such county, to answer such complaint, and not depart without leave, and abide the judgment and orders of such court; and if the defendant fail to enter into such recognizance, the justice shall commit him to jail until he be discharged by due course of law."

"SEC. 9. Upon any continuance granted either party, the

court or justice granting the same shall require the defendant to enter into recognizance for his appearance at the time to which the cause may be continued; and in default of such recognizance, shall commit him to jail until he shall give such recognizance or be discharged by due course of law."

"SEC. 13. Such court shall, on such finding or confession, render such judgment and make such order as may seem just, for securing the maintenance and education to such child by the annual payment to the mother, or, if she be dead or an improper person to receive the same, to such other person as the court may direct, and of such sum or sums of money as the court may order, payable at such time or times as may be adjudged proper. The judgment shall specify the terms of payment, and shall require of such defendant, if he be in custody, to secure the payment of such judgment by good and sufficient sureties; or, in default thereof, he shall be committed to jail until such security be given.

"SEC. 14. No person adjudged to be the father of a bastard child shall be imprisoned for any failure to comply with any order, direction or judgment of the court of justice, for a term exceeding one year."

This same act recognizes the hearing before the justice of the peace as a preliminary examination, and the hearing in the district court as the final trial of the case. Section 21 of the act mentions the hearing before the justice as a "preliminary examination." The main question involved in this case is: What do the words "abide the judgment and orders of such court," as used in § 5 of the bastardy act, mean? Does the word "abide" mean *pay*, or *satisfy?* or does it mean *endure*, or *suffer*, or *acquiesce in*, or something else? It is believed that the word "abide" never means *pay*, or *satisfy*, while it does sometimes mean *endure*, or *suffer;* and to construe the word to mean to *pay*, or *satisfy*, is to give the statute in which it is found a harsh and needlessly severe construction. It would compel a party to enter into a recognizance with sufficient sureties to pay or satisfy a judgment, if any should ever be rendered against him, or to go to jail, and be imprisoned possibly for months before any trial could be had, and although he might be ever so innocent. No statute so harsh as this would be under such a construction can be found even among the crim-

inal statutes of the state.  Besides, if the legislature, when it used the word "abide," meant *pay*, or *satisfy*, why did it not use one of these words?  And if it was intended that the words "abide the judgment and orders of such court" should mean that the recognizors should pay or satisfy the judgment and orders of such court, what is the use of § 9 of the act?  Suppose that the recognizance prescribed by § 5 of the act is entered into by the defendant and his sureties, and the case taken to the district court and there called for trial, and continued at the instance of either party, and another recognizance under § 9 is given: then has the first recognizance spent its force?  If it has, of course the defendant's sureties upon it will never be required to pay or satisfy any judgment that might be rendered in the case.  But if it has not spent its force, then why require this second recognizance?  Section 9 requires that a recognizance shall be entered into, or the defendant committed to jail, at every continuance, whether the continuance is obtained by the state or by the defendant.

The decision in the case of *Towns v. Hale*, 68 Mass. 199, 201, supports the theory that the word "abide," as used in the bastardy act, cannot mean more than a willingness and readiness to have the judgment of the court enforced against the defendant; that it cannot mean that the defendant or his sureties shall perform the final judgment or order of the court, but only that the defendant will attend the court so long as the action is pending, and when the final judgment is rendered that he will surrender himself to the court to give bond to perform such judgment, or to be committed to prison.  See, also, as tending to support this view, the cases of *Shaw v. Hatch*, 6 N. H. 162; *Marshall v. Reed*, 48 id. 36.

The cases of *Jackson v. The State*, 30 Kas. 88, and *Hodge v. Hodgdon*, 62 Mass. 294, 297, are not in point.  In those cases there was an unquestionable breach of the recognizance or bond.  The defendant did not wait in court until the final judgment was rendered, and then surrender himself into the custody of the court to endure or suffer the consequences of such judgment.  In each of these cases the defendant was ab-

sent when his presence was required.    It is true that in both
cases language is used which would go to the extent of saying
that the recognizance or bond is not satisfied unless the judg-
ment is paid; but what is thus said is at most only *dictum.*
There was no necessity for saying any such thing under the
facts of either case.    The *dictum* in the case of *Hodge v. Hodg-
don* was overruled by the supreme court of Massachusetts in
the subsequent case of *Towns v. Hale.*    The supreme court of
Maine, however, seems to hold that the word "abide," in a
statute similar to ours, means *pay,* and that when the final
judgment is rendered the defendant and his sureties commit a
breach of their bond unless they pay or satisfy the judgment.
(*Taylor v. Hughes,* 3 Me. 433;    *Corson v. Tuttle,* 19 id. 409.)
These cases were decided prior to the case of *Towns v. Hale,*
ante, in which last-mentioned case the prior cases were cited
and disapproved.    We like the views expressed by the supreme
court of Massachusetts better than those expressed by the su-
preme court of Maine.    In further support of the views herein
enunciated, see the following cases:    *Power v. Fenno,* 76 Mass.
(10 Gray), 249;    *Turner v. Wilson,* 49 Ind. 581, 585;    *Burr v.
Wilson,* 50 id. 587;    *Gebhart v. Drake,* 24 Ohio St. 177;    *Grieve
v. Freytag,* 31 id. 147;    *Gray v. Fulsome,* 7 Vt. 452;    *Simmons v.
Adams,* 15 id. 677;    *Blood v. Morrill,* 17 id. 598.

In our opinion, when a recognizance or bond is given in
bastardy proceedings by the defendant and his sureties, under
§ 5 of the bastardy act, and final judgment is

Bastardy bond;
no breach,
when.
afterward rendered against the defendant, adjudg-
ing him to be the father of the bastard child, and
in securing the maintenance and education of the child the
judgment requires that the defendant shall make certain pay-
ments of money, and the defendant then voluntarily appears
and surrenders himself into the custody of the court, and, as
required by § 13 of the act, offers to secure the payment of
such judgment by good and sufficient sureties, or in default
thereof to be committed to jail until such security be given,
and he continues ready and willing to perform the judgment

in this manner, no breach of the recognizance or bond has taken place.

The judgment of the court below will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.